UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 24-CV-06499 (AH)

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>       Debtor. | Case No. 22-11340 (MG) |
| YOEL GOLDMAN<br><br>       Appellant,<br>  v.<br><br>MEYER CHETRIT,<br><br>       Appellee. | On Appeal from the United States Bankruptcy Court for the Southern District of New York |

## BRIEF OF THE APPELLANT

Elliot Moskowitz
(*elliot.moskowitz@davispolk.com*)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel to the Appellant*

# TABLE OF CONTENTS

PAGE

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES ON APPEAL ..................................................... 1

STANDARD OF REVIEW ON APPEAL ...................................................... 1

INTRODUCTION ......................................................................................... 2

STATEMENT OF THE CASE ....................................................................... 4

    A.    The Debtor's Bankruptcy ..................................................... 4

    B.    The Plan of Reorganization and Settlement .......................... 5

    C.    The Restraining Notice ......................................................... 6

    D.    Letter Briefing and Court Hearings ...................................... 8

    E.    The Bankruptcy Court Order ................................................ 9

ARGUMENT ................................................................................................ 11

I.    The Bankruptcy Court Erred in Holding that the Notice Did Not Violate the Automatic Stay ........................................................ 11

    A.    The Restraining Notice Violated the Express Language of 11 U.S.C. § 362(a)(2) and (3) ............................................... 11

    B.    The Cases Cited by the Bankruptcy Court Support Reversal ............. 16

    C.    The Bankruptcy Court's Exception to the Automatic Stay Would Have Serious Consequences in Future Cases .......................... 21

II.    The Bankruptcy Court Erred in Holding that the Notice Did Not Violate the Bankruptcy Court's Settlement Order, Plan Confirmation Order, and/or So-ordered Stipulation .......................................................... 21

III.    The Bankruptcy Court Erred in Applying 28 U.S.C. § 959(b) ..................... 24

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

*In re Adomah*,
340 B.R. 453 (Bankr. S.D.N.Y. 2006),
*aff'd*, 368 B.R. 134 (S.D.N.Y. 2007) ................................................. 14

*In re Am. Elec. Tel. Co.*,
211 Fed. 88 (7th Cir. 1914) .......................................................... 17-18

*In re Am. Med. Utilization Mgmt. Corp.*,
494 B.R. 626 (Bankr. E.D.N.Y. 2013) ............................................. 14

*In re Brickell*,
292 B.R. 705 (Bankr. S.D. Fla. 2003),
*aff'd*, 142 F. App'x 385 (11th Cir. 2005) .................................... *passim*

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
538 F.3d 116 (2d Cir. 2008) .......................................................... 13

*City of Chicago, Illinois v. Fulton*,
592 U.S. 154 (2021) ....................................................................... 13

*In re Colonial Realty Co.*,
980 F.2d 125 (2d Cir. 1992) .......................................................... 12

*In re Ditech Holding Corp.*,
No. 19-10412 (JLG), 2021 WL 3716398 (Bankr. S.D.N.Y. Aug. 20, 2021) ... 23

*In re Duplan Corp.*,
212 F.3d 144 (2d Cir. 2000) ............................................................ 2

*E. Refractories Co. v. Forty Eight Insulations Inc.*,
157 F.3d 169 (2d Cir. 1998) ....................................................... 14-15

*In re Enron Creditors Recovery Corp.*,
No. 09 CIV. 4168 RJS, 2011 WL 1345254 (S.D.N.Y. Mar. 31, 2011),
*aff'd*, 461 F. App'x 11 (2d Cir. 2012) ............................................... 2

*Fed. Home Loan Mortg. Corp. v. 550 Riverside Owners Corp.*,
No. 90 CIV. 7873 (RLC), 1991 WL 258779 (S.D.N.Y. Nov. 25, 1991) .... 23-24

*In re Fogarty*,
39 F.4th 62 (2d Cir. 2022) ............................................................. 12

*In re Goerg*,
844 F.2d 1562 (11th Cir. 1988) ........................................................ 22

*In re Hoti Enterprises, L.P.*,
No. 12 CV 8030 (VB), 2013 WL 1812197 (S.D.N.Y. April 26, 2013)............. 21

*In re Killmer*,
513 B.R. 41 (Bankr. S.D.N.Y. 2014) ................................................ 15

*Matarese v. Robinson*,
No. 3:16-CV-0633, 2016 WL 7131527 (N.D.N.Y. Dec. 7, 2016) ......... 9, 10, 16

*NVLand, Inc. v. Vogel* (*In re Ocean Downs Racing Ass'n., Inc.*),
164 B.R. 249 (Bankr. D. Md. 1993) ............................................ 16-17

*Picard v. Fairfield Greenwich Ltd.*,
762 F.3d 199 (2d Cir. 2014) ................................................ 1, 12, 21

*In re REA Express, Inc.*,
2 B.R. 730 (S.D.N.Y. 1980) ............................................................ 23

*Regan v. Ross*,
691 F.2d 81 (2d Cir. 1982) .......................................................... 22

*Shuford v. Citizens South Bank (In re Yatko)*,
416 B.R. 193 (Bankr. W.D.N.C. 2008) ........................................ 18-19

*St. Paul Fire & Marine Ins. Co. v. Labuzan*,
579 F.3d 533 (5th Cir. 2009) ........................................................ 12

*United States v. Colasuonno*,
697 F.3d 164 (2d Cir. 2012) ...................................................... 1, 2

## STATUES & RULES

11 U.S.C. § 362 ............................................................ *passim*

11 U.S.C. § 541(a)(1) ........................................................ 13

28 U.S.C. § 1334 ......................................................... 1, 18

28 U.S.C. § 157(b) .............................................................. 1

28 U.S.C. § 158(a)(1) ........................................................... 1

28 U.S.C. § 959 .......................................................... 9, 10, 23

C.P.L.R. § 5222 .......................................................... *passim*

iv

Fed. R. Bankr. P. 3001(e)(2) ................................................................ 18

Fed. R. Civ. P. 60(b) ......................................................................... 23

## OTHER AUTHORITIES

U.S. Const., art. VI, cl. 2 ................................................................. 22

## JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Southern District of New York (Glenn, C.J.) (the "Bankruptcy Court") had subject matter jurisdiction to enter a final order (the "Order") authorizing Wythe Berry Fee Owner LLC (the "Debtor") to comply with a New York state court restraining notice (the "Notice") served by Meyer Chetrit (the "Appellee"), a judgment creditor of Yoel Goldman (the "Appellant"), pursuant to 28 U.S.C. § 157(b) and 1334(b).  This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1), which confers jurisdiction to district courts to hear appeals "from final judgments, orders, and decrees" of bankruptcy courts.

## STATEMENT OF ISSUES ON APPEAL

1. Whether the Bankruptcy Court erred by holding that a restraining notice served on the Debtor by a third party seeking to restrain funds in the Debtor's bank account was not a violation of the automatic stay set forth in 11 U.S.C. § 362 because the Debtor intended to pay those funds to a creditor.

2. Whether the Bankruptcy Court erred by declining to hold that the aforementioned restraining notice did not violate the Bankruptcy Court's Settlement Order, Plan Confirmation Order, and/or so-ordered Stipulation (each as defined below), each of which required the payment to be made by the Debtor to Appellant (or as otherwise directed by him).

## STANDARD OF REVIEW ON APPEAL

The applicability of the automatic stay is a question of law subject to *de novo* review.  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 206 (2d Cir. 2014); *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012).  This

review "necessarily begins with the statutory text to determine whether the language, viewed in context, unambiguously reveals Congress's intent." *Colasuonno*, 697 F.3d at 173.  If it does, then "no further inquiry is necessary." *Id.* Only if the Court discerns ambiguity does it resort to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history.  *Id.*

Similarly, "[w]here, as here, the Bankruptcy Court's decision involved the interpretation of a plan of reorganization, the decision is subject to *de novo* review." *In re Enron Creditors Recovery Corp.*, No. 09 CIV. 4168 RJS, 2011 WL 1345254 (S.D.N.Y. Mar. 31, 2011), at *3 , *aff'd*, 461 F. App'x 11 (2d Cir. 2012); *accord In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000).

## <u>INTRODUCTION</u>

It is a fundamental principle of bankruptcy law that a party cannot resort to self-help and exercise control over property of a debtor.  The automatic stay plainly forbids this.  *See* 11 U.S.C. § 362(a).  In this case, Appellee did just that. While the automatic stay was still in place—and without seeking permission from the Bankruptcy Court—Appellee served a New York state court restraining notice on the Debtor that sought to restrain funds in the Debtor's bank account.  Appellee did so to prevent the Debtor from making a payment to Appellee that the Debtor was required to make under its plan of reorganization and other orders of the Bankruptcy Court.  After grappling with the question, the Bankruptcy Court issued

2

an opinion which, for the first time in this Circuit (and perhaps anywhere), fashioned an exception to the automatic stay where a debtor has allocated the funds at issue to pay a creditor (in which case, reasoned the Bankruptcy Court, the restraint on those funds would not impact the estate). Among other things, this judge-made exception is at odds with the Bankruptcy Code.

Specifically, the plain language of the automatic stay in 11 U.S.C. § 362(a) unambiguously states that the filing of a Chapter 11 petition stays (i) "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate" and (ii) "the enforcement, against the debtor or against property of the estate, of a judgment obtained before" the petition. There can be no serious dispute that (i) a restraint on a debtor's bank account is at least "an act . . . to exercise control over property of the estate," or that (ii) the restraining notice here seeks to enforce against the debtor a state court judgment obtained before the petition. There is no exception in the Code for property that the debtor intends to eventually transfer from its bank account to another party.

In this case, the violation of the stay was compounded by the fact that Appellee's effort to seize control over these funds violated orders of the Bankruptcy Court, which required that the funds be paid to Appellant pursuant to a confirmed plan of reorganization. The Supremacy Clause makes orders of the bankruptcy court superior to any state court restraining notice.

3

Appellee could have chosen a different path.  He could have appeared in the bankruptcy case (he was plainly on notice of it) and objected to proposed orders mandating that the payment be made to Appellant.  Or he could have made a motion seeking to lift the automatic stay, which parties routinely do before taking any action against property of a debtor.  Instead, he resorted to self-help and, without warning or seeking permission of the Bankruptcy Court, served the Debtor with the state court restraining notice.  This is simply not allowed, and the Bankruptcy Court's decision should be reversed.

Finally, while the Bankruptcy Court opined that its decision would not lead to "open season for restraining notices," there is no reason to have confidence in that prediction if the decision is left to stand.  The automatic stay is well founded and it should have been respected here.

## STATEMENT OF THE CASE

### A.    The Debtor's Bankruptcy

In 2013, Appellant Goldman and his former business partner Zelig Weiss partnered to purchase land to develop a luxury hotel located at 55 Wythe Avenue, Brooklyn, New York, also known as 111 N. 12th Street, Brooklyn, New York.  After acquiring the land, they developed this property into the William Vale Hotel (the "Hotel"), which opened in 2016.  Goldman and Weiss formed a series of entities to operate the Hotel venture, which included an office, food and beverage

4

operations, and parking.  To this day, Goldman and Weiss each own a 50% interest in several of these entities.  Bankr. Dkt. #331 Ex. 1 (William Vale Hotel LLC Hotel Operating Agreement) § 8; *id.* Ex. 2 (William Vale FNB LLC Operating Agreement) § 8; *id.* Ex. 3 (North 12 Parking LLC Operating Agreement) § 8; *id.* Ex. 5 (Fifth Amendment to the Wythe Berry LLC Operating Agreement) ¶ 8.

In 2017, Goldman and Weiss refinanced the property's original construction financing.  Bankr. Dkt #363 at 4.  To do so, they formed a new entity, Wythe Berry Fee Owner (the Debtor), which acquired title to the real property.  *Id.*  The Debtor was 50% owned by Weiss and 50% owned by Goldman indirectly via his wholly owned company All Year Holdings Limited ("All Year").  *Id.* at 3.

All Year filed for bankruptcy in 2021 and, on October 6, 2022 (the "Petition Date"), an involuntary Chapter 11 petition was filed against the Debtor by several prepetition creditors.  Bankr. Dkt. #1.

### B.    **The Plan of Reorganization and Settlement**

On April 21, 2024, the Debtor filed its Second Amended Plan of Reorganization, which attached and incorporated a settlement agreement purporting to settle issues related to the sale of the Hotel complex, to which Appellant was not a party.  Bankr. Dkt. ##304, 306.

On May 8, 2024, Appellant filed an objection to the settlement and the Debtor's plan of reorganization.  *See generally* Bankr. Dkt. #330.  Among other

things, Appellant objected to the sale of an internet domain for the Hotel (the "Domain Name") without his consent. *Id.* ¶¶ 27-30, 38-39. Soon after, Appellant agreed to withdraw his objection to the conveyance of the Domain Name in exchange for half of its $1.3 million purchase price: $650,000 (the "Domain Name Settlement"). Appellant's agreement was memorialized in Section 4(d) of the Amended and Restated Settlement Agreement (the "Settlement Agreement") filed on May 10, 2024, which stated: "As directed jointly by the members of WV Hotel, the Debtor shall distribute the Domain Purchase Price as follows: 50% shall be paid to Weiss (or as otherwise directed by Weiss) and 50% shall be paid to Yoel Goldman (or as otherwise directed by Yoel Goldman)." Bankr. Dkt. #341 § 4(d).

On May 29, 2024, the Bankruptcy Court entered orders confirming the Plan, which incorporates the Settlement Agreement (Bankr. Dkt. #370, the "Plan Confirmation Order"), and approving the Settlement Agreement (Bankr. Dkt. #369, the "Settlement Order"). Appellant, the Debtor, Weiss, and others thereafter filed a Stipulation Regarding Amended and Restated Settlement (the "Stipulation") to further memorialize the Domain Name Settlement. Bankr. Dkt. #372. On May 30, 2024, the Bankruptcy Court approved the Stipulation. Bankr. Dkt. #373.

## C.    **The Restraining Notice**

In the days following entry of the Stipulation, the Debtor failed to make the payment to Goldman. On June 6, 2024, Debtor's counsel informed Appellant's

counsel that Appellee, a judgment creditor of Appellant, had served the Debtor

with the Notice, which was dated June 4, 2024.  Bankr. Dkt. #400 Ex. A.  Appellee

did not seek permission of the Bankruptcy Court or the Debtor prior to serving the

Notice.  Pursuant to New York C.P.L.R. § 5222, the Notice purports to prevent the

Debtor from paying Appellant because Appellee holds a state court judgment

against Appellant (the "State Court Judgment").  *Id.* Ex. B.   The Notice states:

> "WHEREAS, it appears that you owe a debt to the judgment debtor or
> are in possession or in custody of property in which the judgment
> debtor has an interest; TAKE NOTICE THAT, pursuant to CPLR
> 522(b) . . . you are hereby forbidden to make or suffer any sale,
> assignment, or transfer of, or any interference with, any such property
> or pay over, or otherwise dispose of any such debt or property, except
> under the direction of the sheriff or pursuant to order of the court,
> until the expiration of one year after this notice is served upon you, or
> until the judgment is satisfied or vacated, whichever occurs first."

C.P.L.R. § 5222(a) addresses the issuance of such notices and states that

restraining notices must "be issued by the clerk of the court or the attorney for the

judgment creditor as officer of the court," and "may be served upon any person,

except the employer of a judgment debtor or obligor where the property sought to

be restrained consists of wages or salary due or to become due to the judgment

debtor or obligor."  C.P.L.R. § 5222(b) addresses the effect of the restraint:

> "A judgment debtor or obligor served with a restraining notice is
> forbidden to make or suffer any sale, assignment, transfer or
> interference with any property in which he or she has an interest,
> except as set forth in subdivisions (h) and (i) of this section, and
> except upon direction of the sheriff or pursuant to an order of the
> court, until the judgment or order is satisfied or vacated. . . . All

property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i)[1] of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs."

Following receipt of the Notice, the Debtor took no action.

**D.**    **Letter Briefing and Court Hearings**

On July 1, 2024, Appellant submitted a letter to the Bankruptcy Court advising it of these events and requesting a status conference. Bankr. Dkt. #400. The Debtor submitted its own letter the next day, stating that the Debtor stood ready to transfer the $650,000 to Appellant upon receipt of assurance that either Appellee had withdrawn the Notice or that such transfer would not violate the Notice. Bankr. Dkt. #402. The Bankruptcy Court held a status conference on July 2, 2024 and requested letter briefing. *See* Bankr. Dkt. #403.

---

[1] Sections (h) and (i) deal with the "[e]ffect of restraint on judgment debtor's banking institution account." C.P.L.R. §§ 5222(h) and (i).

Appellant and Appellee submitted letter briefs on July 8, 2024.  The Bankruptcy Court held a hearing on July 9, 2024 during which the Court asked the parties to brief whether *Matarese v. Robinson*, No. 3:16-CV-0633, 2016 WL 7131527 (N.D.N.Y. Dec. 7, 2016) was applicable here.  On July 12, 2024, the parties filed additional letters. Bankr. Dkt. ##410, 411.

**E.    The Bankruptcy Court Order**

On August 1, 2024, the Bankruptcy Court entered a Memorandum Opinion and Order Authorizing Debtor to Comply with Restraining Notice (the "Order"), holding that "the [Notice] does not violate the automatic stay; it is valid and enforceable; and it requires the Debtor to withhold payment to [Appellant] pending further order of the Bankruptcy Court."  Bankr. Dkt. #430 at 3.

In the Order, the Bankruptcy Court summarized the procedural history and various parties' positions, and then addressed the legal standards purportedly relevant to whether the Notice violates the automatic stay.  The Bankruptcy Court cited not only to Section 362 and C.P.L.R. 5222, but also 28 U.S.C. § 959(b). Order at 13-18.  The Bankruptcy Court reasoned that because 28 U.S.C. § 959(b) "requires a debtor to operate according to valid state laws," and the Notice "does not interfere with" "the Debtor's administration of this case," "the use of its property or assets other than as required by law," or "the rights or protections of the Bankruptcy Code," "the state law should be applied."  *Id.* at 18.

In the "Discussion" section of the Order, the Bankruptcy Court discussed four cases, though it acknowledged that "there is little caselaw on all fours with the facts of this case."[2]  *Id.* at 18.  First, the Bankruptcy Court determined that *Matarese v. Robinson*, which the Bankruptcy Court had raised at the July 2 status conference, was "obviously distinguishable from this case in that the restraining notice there was served after the bankruptcy case was voluntarily dismissed."  *Id.* at 18-19 (citing *Matarese*, 2016 WL 7131527).  Then the Bankruptcy Court applied three out-of-circuit cases, only one of which "concluded that the restraints in question were permissible": *In re Brickell*, 292 B.R. 705 (Bankr. S.D. Fla. 2003), *aff'd*, 142 F. App'x 385 (11th Cir. 2005).  Order at 20.  These cases are addressed in greater detail below.  Ultimately, the Bankruptcy Court decided that this case was "most similar to *Brickell*" because "(1) 'the claims against the estate creditor have been reduced to final judgment,' (2) the judgment has been 'issued prior to bankruptcy distribution,' [and] (3) the debtor 'is not opposed' to the relief sought."  *Id.* at 25 (quoting *Brickell*, 292 B.R. at 709).  The Bankruptcy Court added that, like *Brickell*, this "one-off" situation "would impose little

---

[2] At no point in the "Discussion" section did the Bankruptcy Court address the language of Section 362.

administrative burden," in part because "Goldman has appealed confirmation of the Plan."[3]  *Id.*

The Bankruptcy Court concluded by authorizing the Debtor to comply with the Notice, though it attempted to limit its holding:

> "This holding is by no means *carte blanche* for (proverbial) Creditor Bs to serve any debtor in bankruptcy a restraining notice at any time on account of debts owed by (proverbial) Creditor As with the expectation that it will be effective. Indeed, such a result would merely substitute one race to the courthouse for another, rendering the protection of bankruptcy a nullity. It is not open season for restraining notices, and judgment creditors serving them on a debtor do so at their own risk. Rather, the enforcement of the Restraining Notice here is permissible because it will have no effect on the reorganizational efforts of the Debtor, nor the distributions to creditors. In the event the dispute drags on and threatens the closing of this case, other methods may be available, such as requiring escrow of the funds, that can be considered should circumstances justify it."

Order at 26-27.

Appellant timely filed a notice of appeal of the Order.  Bankr. Dkt. #440.

## **ARGUMENT**

### I.    **The Bankruptcy Court Erred in Holding that the Notice Did Not Violate the Automatic Stay**

#### A.    **The Restraining Notice Violated the Express Language of 11 U.S.C. § 362(a)(2) and (3)**

The Bankruptcy Court erred by holding that a restraining notice served on the Debtor by a third party seeking to restrain funds in the Debtor's bank account

---

[3] Goldman has since voluntarily dismissed his appeal of the Plan.  Bankr. Dkt. #442.

was not a violation of the automatic stay set forth in 11 U.S.C. § 362.  Simply put, the Bankruptcy Court created an exception to the stay that is nowhere to be found in the statutory text.

The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove [the] debtors into bankruptcy" by "afford[ing] [the] debtors a breathing spell from the collection process and enabl[ing] them to attempt a repayment or reorganization plan to satisfy existing debt." *In re Fogarty*, 39 F.4th 62, 71 (2d Cir. 2022) (internal citations and quotation marks omitted).  Beyond shielding the debtor, the automatic stay "also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir. 2009) (quoting legislative history).  "[S]o central is the § 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect." *Picard*, 762 F.3d at 207 (quoting *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992)).

Specifically, Section 362(a) unambiguously states that the filing of a Chapter 11 petition "operates as a stay, applicable to all entities, of . . . (2) the enforcement against the debtor or against property of the estate, of a judgment obtained before

the commencement of the case under this title; [and] (3) any act to obtain

possession of property of the estate or of property from the estate or to exercise

control over property of the estate," among other things.  Property of the estate, in

turn, includes "all legal or equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1).  "Every conceivable interest of

the debtor, future, nonpossessory, contingent, speculative, and derivative, is within

the reach of § 541." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122

(2d Cir. 2008) (citation omitted).  Thus, Section § 362(a)(3) "prohibits affirmative

acts that would disturb the status quo of estate property as of the time when the

bankruptcy petition was filed." *City of Chicago, Illinois v. Fulton*, 592 U.S. 154,

158 (2021).

Here, by attempting to restrain the Debtor from exercising its right to

dispose of $650,000 from the Debtor's own bank account, Appellee has violated

both Sections 362(a)(2) and (3).  There can be no dispute that the $650,000 at issue

remains property of the estate, as the money still sits in the Debtor's bank account.

*See* Bankr. Dkt. #341 § 4(d).  Accordingly, by "forbid[ing the Debtor] to make or

suffer any sale, assignment, or transfer of" the $650,000, Bankr. Dkt. #400 Ex. A,

the Notice seeks to "obtain possession of property of the estate or of property from

the estate," 11 U.S.C. 362(a)(3).  Moreover, the Notice is an attempted

"enforcement against the debtor [and] property of the estate, of a judgment

obtained before the commencement of the [Chapter 11] case": *i.e.*, the State Court

Judgment.  11 U.S.C. 362(a)(2).  Nothing in the statute relieves Appellee from

abiding by the automatic stay just because the Debtor *ultimately* intends to convey

the funds to Appellant.

   Accordingly, courts in this Circuit have previously held that issuing a

C.P.L.R. 5222 restraining notice on a debtor violates the automatic stay.  For

example, in *Adomah*, a creditor served a prepetition restraining notice under

C.P.L.R. 5222(b) on a bank purporting to require the bank to restrain funds in the

Chapter 7 debtor's accounts.  *In re Adomah*, 340 B.R. 453, 458 (Bankr. S.D.N.Y.

2006), *aff'd*, 368 B.R. 134, 454-55 (S.D.N.Y. 2007).  The court held that the bank

violated the automatic stay when it honored the notice by imposing a freeze on the

Debtor's accounts.  *Id.* at 458.  Moreover, the court held that the bank's argument

that the notice was mandatory was "flat wrong": the Bankruptcy Code preempts

state law, so "upon the filing of the petition, the restraining notice became void and

had no effect."  *Id.*  Similarly, in *Medical Utilization Management*, the bankruptcy

court declared a C.P.L.R. 5222 restraining notice seeking to collect on a state court

post-petition judgment against the debtor to be "void and of no effect."  *In re Am.

Med. Utilization Mgmt. Corp.*, 494 B.R. 626, 630 (Bankr. E.D.N.Y. 2013)

(ultimately holding the creditor in contempt because the debtor gave creditor notice

of the bankruptcy and the creditor made no effort to remove the restraining notice).

There is no dispute that the automatic stay was in force when Appellee

served the notice, as it remains in force to this day.  The automatic stay "is

effective immediately upon the filing of the petition."  *E. Refractories Co. v. Forty*

*Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998).  It continues to apply until

either the "property is no longer property of the estate," or until "the time the case

is closed" or dismissed, whichever is earlier.  11 U.S.C. § 362(c)(1)-(2); *see In re*

*Killmer*, 513 B.R. 41, 50 (Bankr. S.D.N.Y. 2014) (the "stay continues to protect

property of the estate after the discharge order is entered and until the case is

closed or the property is formally abandoned").  Here, the involuntary petition was

filed on October 6, 2022 and Appellee served the Notice on June 5, 2024—long

after the petition date, nearly two weeks before the Plan's effective date, and long

before the closure of the case, which has not yet occurred.

Appellee had multiple options to try to enforce the State Court Judgment

against Appellant without violating the automatic stay.[4]  Most plainly, Appellee

could have filed a motion seeking limited relief from the stay under Section

362(g), which permits a bankruptcy court to modify or condition the automatic stay

on request of a party in interest and after a notice and hearing, under certain

---

[4] Of course, as discussed in Section II, *infra*, the Notice would still be unenforceable
because the court orders require that the Debtor pay Appellant the $650,000 he is owed.

circumstances.[5]  Appellee also could have continued to litigate with Appellant

through the state courts, which he continues to do.  Instead, upon learning that

Appellant was set to receive $650,000 pursuant to the Bankruptcy Court's orders,

he resorted to self-help and served the Notice on the Debtor.  This he could not do.

### B.    The Cases Cited by the Bankruptcy Court Support Reversal

The Bankruptcy Court acknowledged that "there is little caselaw on all fours

with the facts of this case."  Order at 18.  But rather than apply the plain language

of Section 362(a), the Bankruptcy Court relied on three out-of-circuit cases even

though it acknowledged that in two of them "the courts concluded that the

attempted enforcement efforts [to enforce the restraints] were impermissible."

Order at 20.[6]  These two cases—*Ocean Downs* and *Yatko*—actually *support* the

---

[5] Had such a motion been filed, Appellant would have opposed it and the Bankruptcy Court would have decided the outcome based on the standards for lifting the automatic stay.

[6] The Bankruptcy Court also cited *Matarese v. Robinson*, No. 3:16-CV-0633, 2016 WL 7131527 (N.D.N.Y. Dec. 7, 2016), but acknowledged that it was "obviously distinguishable" because "the restraining notice there was served after the bankruptcy case was voluntarily dismissed."  Order at 18-19.  Not only was the *Matarese* restraining notice served after the case was voluntarily dismissed, but the funds sought by the creditor had already left the debtor's possession, and the automatic stay was no longer in effect.  *Matarese*, 2016 WL 7131527 at *1-2.  This situation is the opposite.  Separately, while *Matarese* contains language that the restraining notice was defective because (among several reasons) it sought the release of funds rather than mere restraint,  2016 WL 7131527 at *4, this language does not endorse a creditor's attempt to restrain funds in a debtor's account.  Rather, the court was simply noting that the restraining notice was defective in multiple ways, including that it sought more than a restraint—which is impermissible under state law.

conclusion that the Notice violates the automatic stay, and the third outlier case is distinguishable.[7]

First, in *Ocean Downs*, two creditors of a Chapter 11 bankruptcy estate creditor sought to enforce state court garnishment judgments against the bankruptcy trustee, each arguing that their judgment should have priority. *NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n., Inc.)*, 164 B.R. 249, 251-54 (Bankr. D. Md. 1993). The court explained that Chapter 11 trustees are not subject to garnishment by a holder of state or federal judgment against a creditor of the estate, as Federal Rule of Bankruptcy Procedure 69 provides a specific post-judgment procedure for enforcing judgments which the two creditors could not bypass. *Id.* at 254. And as a policy matter, "[t]o permit a garnishment to be taken against a bankruptcy trustee would impede and frustrate the policy of promoting the orderly and expeditious administration of debtors' estates, and is therefore disfavored." *Id.* This is because, if "carried out to its logical result," forcing bankruptcy trustees to litigate garnishments would "place an additional burden on the bankruptcy court and work a delay in the settlement of the estate," as "[i]t is conceivable that garnishment proceedings may be prolonged for years." *Id.* (citing *In re Am. Elec. Tel. Co.*, 211 Fed. 88, 90-91 (7th Cir. 1914)). The court also noted

---

[7] None of these three cases were briefed by the parties or raised during either the July 2 status conference or July 9 hearing.

that there was a "proper procedure" for "the substitution of claimants in a

bankruptcy estate" which should have been followed: Bankruptcy Rule 3001(e)(2).

*Id.* at 255.

Second, in *Yatko*, the court similarly denied a creditor's efforts to enforce a

prepetition state court order forbidding a Chapter 7 bankruptcy trustee from

disposing of any assets, including assets the debtors were otherwise entitled to

receive from the liquidation of their former company. *Shuford v. Citizens South

Bank (In re Yatko)*, 416 B.R. 193, 195 (Bankr. W.D.N.C. 2008). The court

sidestepped any question of whether the state court order created an enforceable

lien under state law, holding that the order "crossed the line into a protected area"

because the Bankruptcy Code "gave exclusive jurisdiction over the debtor's

bankruptcy case (28 U.S.C. 1334(a)) and his property (28 U.S.C. 13[3]4(e)) to the

U.S. District Courts." *Id.* at 198-99. Under Sections 362 and 959, which require

bankruptcy court approval for suits against bankruptcy trustees in foreign courts,

"a garnishment, attachment or supplemental proceeding against the bankruptcy

trustee cannot be maintained without relief from stay and/or prior leave of the

appointing bankruptcy court." *Id.* at 201. Accordingly, the state court "action was

void and could not give rise to a lien in the Bank's favor." *Id.* The court did not

hold that the state court order could *never* be enforced against the trustee, but noted

that if "leave had been sought . . . and assuming safeguards were put in place to

18

limit the cost and disruption to the bankruptcy estate, the request would likely have been granted." *Id.* But like this case, leave was never sought.

Third, the Bankruptcy Court cited the outlier case *Brickell*, in which the court permitted a law firm to enforce a post-petition garnishment against the bankruptcy estate which sought payment for the Chapter 7 debtor's ex-wife's failure to pay legal fees. *Brickell*, 292 B.R. at 705. The court did not address whether the judgment violated Section 362, but distinguished between pre-judgment garnishment, which would "unnecessarily complicate and delay the efficient administration of a bankruptcy estate," and post-judgment garnishment, which would only "create[] a minor inconvenience for the trustee." *Id.* at 709. The court noted that the Trustee had "not presented any opposition." *Id.* at 710.

While the Bankruptcy Court bent over backwards to hold in line with *Brickell* rather than *Ocean Downs* or *Yatko*, *Brickell* is inapposite for several reasons. *See* Order at 25. First, the *Brickell* court did not address any argument that the garnishment would violate the automatic stay, as the trustee had filed a motion with the court actively seeking authorization to disburse funds in accordance with the garnishment. 292 B.R. at 707. Here, far from seeking authorization to comply with the Notice before it was served, the Debtor has

19

remained entirely neutral.[8]  Second, the *Brickell* court analogized the garnishment to "the substitution of creditors in the claim transfer process," which would not "hamper the efficient administration of the estate." *Id.* at 709.  The Bankruptcy Court applied this reasoning to the facts at hand, arguing that it was unlikely for the Notice to delay the distribution of estate assets and prevent the Plan Administrator from closing the estate because Appellant had appealed confirmation of the Plan (*see* Bankr. Dkt. #382).  Order at 25.  Not only is this point moot because Appellant has since voluntarily dismissed his appeal of the Plan, but this very appeal – as well as the letter briefing and court hearings that preceded it – exemplify the inefficiencies that result from permitting a state court judgment to bypass the automatic stay.  Moreover, as discussed immediately below, even if *Brickell* presented a one-off situation where the garnishment would not wreak havoc on estate administration, it cannot be viewed in a vacuum.  Finally, to the extent *Brickell* is simply in tension with the automatic stay, it was wrongly decided.

---

[8] Counsel to the Plan Administrator stated: "[T]he Plan Administrator stands ready to transfer the $650,000 to Mr. Goldman immediately upon receipt of assurance that either the judgment creditor has withdrawn the restraining order or that such a transfer would not violate the restraining order."  Bankr. Dkt. #402 at 2.

### C.    The Bankruptcy Court's Exception to the Automatic Stay Would Have Serious Consequences in Future Cases

If the Order is not reversed and Appellee is permitted to flout the automatic stay, "open season for restraining notices" (Order at 26) will be upon the bankruptcy courts, notwithstanding the Order's attempt to caution others from issuing such notices in the future.  This issue may arise in a variety of contexts. For example, a plan of reorganization frequently involves the making of distributions to hundreds of even thousands of creditors.  In future cases, parties— perhaps even collection agencies—may search a bankruptcy docket for the names of creditors against whom state court judgments exist and serve the debtor with numerous state court notices to prevent distributions from being made to such creditors under a plan.  And it does not take a wild imagination to think of other exceptions.  Simply put, estates would no longer be protected against "any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the . . . orderly administration of the estate." *Picard*, 762 F.3d at 207 (citing 3 Collier on Bankruptcy ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)).

### II.    The Bankruptcy Court Erred in Holding that the Notice Did Not Violate the Bankruptcy Court's Settlement Order, Plan Confirmation Order, and/or So-ordered Stipulation

The Debtor's obligation to pay $650,000 to Appellant (or as otherwise directed by him) resides in three different Bankruptcy Court orders: (i) the May 29,

21

2024 order approving the Settlement Agreement, which provides for the $650,000 payment (Bankr. Dkt. #369); (ii) the May 29, 2024 order approving the Fourth Amended Chapter 11 Plan of Reorganization of Wythe Berry Fee Owner LLC (Bankr. Dkt. #370), which incorporates the Settlement Agreement; and (iii) the May 30, 2024 Stipulation approving the Stipulation Regarding Amended and Restated Settlement, which again provides for the payment (Bankr. Dkt. #372). The Notice did not relieve the Debtor from its obligation.

First, the Bankruptcy Court had ample authority to enforce the three orders, as a "bankruptcy court ha[s] the inherent power to enforce its own order[s]."  *In re Hoti Enterprises, L.P.*, 12 CV 8030(VB), 2013 WL 1812197, at *18 (S.D.N.Y. April 26, 2013).  Because the Notice creates a conflict between a state court order and the three Bankruptcy Court orders, the former must yield because the Bankruptcy Code is federal law that preempts state law under the Supremacy Clause of the United States Constitution, Article VI clause 2.  *In re Goerg*, 844 F.2d 1562, 1565 (11th Cir. 1988) ("Owing to the supremacy clause, federal bankruptcy law preempts state law."); *see Regan v. Ross*, 691 F.2d 81, 83 n.5 (2d Cir. 1982) ("State law that conflicts with a mandate of the Bankruptcy Act . . . is invalid under the Supremacy Clause of the Constitution." (internal quotations and citations omitted)).

Section 10.5 of the Plan also provides that "[u]pon entry of the Confirmation Order, all "parties in interest . . . shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan." Bankr. Dkt. #364 § 10.5(a). Under the Plan, the Debtor is legally obligated to pay Appellant the $650,000 in a consensual resolution for withdrawing his prior objection to the conveyance of the Domain Name. *Id.* § 9.1(c), Ex. A § 4(d).[9] Thus, Appellee was enjoined from interfering with the implementation of the Plan, including the transfer of the $650,000 owed to Appellant. *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 3716398, at *7-8 (Bankr. S.D.N.Y. Aug. 20, 2021) (holding that the plan "enjoins conduct intended to interfere with the implementation of the Plan" and that a post-plan lawsuit "falls squarely within the scope of that section").

As with the automatic stay, there are procedural steps Appellee could have taken rather than resort to self-help. He could have objected to these court orders

---

[9] The Debtor's failure to pay Appellant also calls into question the basis upon which the Bankruptcy Court approved the Plan and Settlement Agreement. Had Appellant known that the Debtor would not honor its contractual responsibilities ordered by the Bankruptcy Court, he may never have withdrawn his objection to the conveyance of the Domain Name, and the subsequent May 15 Plan confirmation hearing – which included a direct examination of the Plan Administrator and oral argument on Appellant's objection to the Plan and Settlement Agreement – may have proceeded quite differently.

before they were entered, or filed a motion pursuant to Federal Rule of Civil

Procedure 60(b) seeking relief from them later.  He took none of these steps.

## III.    <u>The Bankruptcy Court Erred in Applying 28 U.S.C. § 959(b)</u>

The Order also relies on 28 U.S.C. § 959(b), which provides that a debtor

"shall manage and operate" its property "according to the requirements of the valid

laws of the State in which such property is situated, in the same manner that the

owner or possessor thereof would be bound to do if in possession thereof."  Order

at 17-18.  The statute merely stands for the unremarkable proposition that a debtor

must comply with state law—but as cases interpreting the statute have held, only

so long as "that state law does not conflict with the bankruptcy law."  *In re REA*

*Express, Inc.*, 2 B.R. 730, 734 (S.D.N.Y. 1980) (observing that debtor was

obligated to renew its operating certificate under state law); *see also Fed. Home*

*Loan Mortg. Corp. v. 550 Riverside Owners Corp.*, No. 90 CIV. 7873 (RLC), 1991

WL 258779, at *1-2 (S.D.N.Y. Nov. 25, 1991) (requiring receiver to pay fines for

sanitation violations).

Nothing in Section 959(b) or precedential case law suggests the statute

operates to override the automatic stay and permit a creditor to use state law to

restrain a debtor.  The Bankruptcy Court held that because C.P.L.R. § 5222 is "a

state law of general ability" and the Notice "does not interfere with the rights or

protections of the Bankruptcy Code," the Notice should be applied.  Order at 18.

But there is no analytical distinction between the Notice and any restraining notice or garnishment served by a creditor on a debtor that complies with state law.  Yet, as discussed above, the latter is clearly prohibited by the automatic stay, and allowing a judgment creditor to restrain a debtor from making plan or settlement distributions notwithstanding the automatic stay could wreak havoc in future cases.

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's Order should be reversed and the Debtor should be ordered to pay Appellant the $650,000 he is owed under existing orders of the Bankruptcy Court.

Dated:  October 17, 2024
         New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Elliot Moskowitz*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Elliot Moskowitz

*Counsel to the Appellant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that the above memorandum contains 5,803 words.  The above memorandum also complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this memorandum has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ Elliot Moskowitz*
Elliot Moskowitz