UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 24-CV-06499 (AH)

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>Debtor. | Case No. 22-11340 (MG) |
| YOEL GOLDMAN,<br><br>Appellant,<br><br>-vs.-<br><br>MEYER CHETRIT,<br><br>Appellee. | On Appeal from the United States Bankruptcy Court for the Southern District of New York |

**<u>BRIEF OF THE APPELLEE</u>**

Douglas Segal
(*douglassegal@ssglaw.com*)

SUKENIK, SEGAL & GRAFF, P.C.
450 Seventh Avenue, 42nd Floor
New York, New York 10123
(212) 725-9300

Counsel to the Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................(iii)

STATEMENT OF ISSUES ON APPEAL ......................................................2

STATEMENT OF THE CASE ........................................................................2

SUMMARY OF ARGUMENT ........................................................................5

ARGUMENT ................................................................................................6

      POINT I:    APPELLANT DOES NOT HAVE STANDING
                  TO ASSERT THAT ISSUANCE OF THE RESTRAINING
                  NOTIC VIOLATED THE AUTOMATIC STAY
                  IMPOSED BY THE BANKRUPTCY CODE ..................6

      POINT II:   THE ISSUANCE OF THE RESTRAINING NOTICE
                  DID NOT VIOLATE THE AUTOMATIC STAY
                  IMPOSED BY THE BANKRUPTCY CODE ..................8

                  Appellant Falsely Asserts that Appellee
                  Restrained Funds in the Debtor's Bank Account ............8

                  The Automatic Stay Did Not Prohibit
                  The Issuance of the Restraining Notice ...........................9

                        11 U.S.C. §362(a)(2) ..................................................10

                        11 U.S.C. §362(a)(3) ..................................................12

                    The Automatic Stay Was No Longer
                  In Effect Vis-à-vis the Restraining Notice ......................13

                  Conclusion ..................................................................14

i

POINT III:    28 U.S.C. §959(b) REQUIRES THE DEBTOR TO
              COMPLY WITH THE RESTRAINING NOTICE  ......... 14

POINT IV:    THE ISSUANCE OF THE RESTRAINING
             NOTICE DID  NOT VIOLATE
             THE BANKRUPTCY COURT'S ORDERS ................... 16

POINT V:    PUBLIC POLICY CONSIDERATIONS
            FAVOR PERMITTING THE ISSUANCE
            OF THE RESTRAINING NOTICE ................................ 18

CONCLUSION ............................................................................... 22

CERTIFICATE OF COMPLIANCE ............................................. 23

## TABLE OF AUTHORITIES

**CASES:**

In re Adomah,
340 B.R. 453 (Bankr. S.D.N.Y. 2006)...........................................................6, 10

In re American Medical Utilization Management Corporation,
494 B.R. 626 (Bankr. E.D.N.Y. 2013)..............................................................11

In re Ampal-Am. Israel Corp.,
502 B.R. 361, 371 (Bankr. S.D.N.Y. 2013).........................................................5

In re Boodrow,
126 F.3d 43 (2d Cir. 1997)...........................................................................13-14

In re Brickell,
292 B.R. 705 (Bankr. S.D. Fla. 2003),
aff'd, 142 F. App'x 385 (11th Cir. 2005) ....................................................13, 19

In re Gilyard,
Misc. No. 07-20001 (Bankr. D. Columbia 2008) .............................................13

Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer),
178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995) ..................................................5-6

Mission Product Holdings, Inc. v. Tempnology, LLC,
139 S.Ct. 1652, 1665 (2019) ...........................................................................15

NVLand, Inc. v. Vogel (In re Ocean Downs Racing Association, Inc.),
164 B.R. 249 (Bankr. D. Md. 1993) ..................................................................13

Shirley Duke Associates v. Shirley Duke Associates, A.P.I.,
611 F.2d 15 (2d Cir. 1979)...........................................................................20-21

Shuford v. Citizens South Bank (In re Yatko),
416 B.R. 193 (Bankr. W.D.N.C. 2008) ...................................................7, 12, 13

iii

Siskin v. Complete Aircraft Services, Inc. (In re Siskin),
231 B.R. 514, 518 (Bankr. E.D.N.Y. 1999).......................................................5

**STATUTES & RULES:**

11 U.S.C. §362.................................................................................*passim*

28 U.S.C. §959(b) .......................................................................5, 14-16

C.P.L.R. §5222.........................................................................4, 5, 8, 15, 16

C.P.L.R. §5230.................................................................................10

Fed. R. Bankr. P. 3001 ..................................................................13

The within brief is submitted by appellee Meyer Chetrit ("Appellee") in opposition to appellant Yoel Goldman's ("Appellant") appeal of an order issued by the United States Bankruptcy Court for the Southern District of New York (Glenn, C.J.) (the "Bankruptcy Court").

The within appeal is nothing more than the latest attempt by Appellant, who is not subject to any bankruptcy proceeding, to exploit someone else's bankruptcy proceedings to shield Appellant's assets from the reach of Appellant's judgment creditor. Specifically, Appellant was to be paid $650,000 by a Chapter 11 debtor pursuant to a settlement agreement which Appellant consented to. Such obligation was further memorialized in the debtor's plan of reorganization. After such plan was confirmed, Appellee, who is Appellant's judgment creditor, issued a restraining notice on such debtor which prohibited it from paying the debt which it owed Appellant. In response, Appellant argued that such restraining notice violated the automatic stay imposed by 11 U.S.C. §362(a). The Bankruptcy Court rejected such argument.

Though Appellant appeals the Bankruptcy Court's rejection of such argument, such appeal must be denied because (amongst other reasons) Appellant lacks standing to assert that Appellant violated the automatic stay and because the automatic stay which previously applied herein did not prohibit the issuance of the subject restraining notice.

## **STATEMENT OF ISSUES ON APPEAL**

1. Does a prospective payee of a Chapter 11 debtor - who is asserting rights in some capacity other than as a creditor of the debtor - have standing to assert that a restraining notice issued to the debtor prohibiting that any payments be made to such payee violated the automatic stay imposed by 11 U.S.C. §362(a)?

2. Does a restraining notice – which only prohibits the payment of funds to one of a Chapter 11 debtor's prospective payees but does not levy upon or seek the turnover of any of the debtor's assets – violate the automatic stay imposed by 11 U.S.C. §362(a)?

3. Does the automatic stay imposed by 11 U.S.C. §362(a) terminate with respect to a payment to be made by a Chapter 11 debtor once the debtor has abandoned any claims to the amount which the debtor is to pay and the bankruptcy court has confirmed the debtor's reorganization plan which obligates the debtor to pay such amount?

## **STATEMENT OF THE CASE**

The factual background of the instant matter is straightforward.   On October 6, 2022, an involuntary Chapter 11 petition was filed against Wythe Berry Fee Owner LLC (the "Debtor").   Bankr. Dkt. #1.   Though Appellant owned a 50% interest in the Debtor, Appellant himself was never subject to any bankruptcy proceeding.

On   April   21,   2024,   the   Debtor   filed   its   Second   Amended   Plan   of

2

Reorganization, which incorporated a proposed settlement agreement between the Debtor and others which settled various open disputes pertaining to the Debtor. Bankr. Dkt. #306.   Amongst other things, said agreement provided that the Debtor would purchase a certain domain name (the "Domain Name") for $1,300,000. Appellant, who was not a party to such agreement, filed an objection to the proposed settlement agreement and the Debtor's plan of organization in part because he claimed that he was a part beneficial owner of the Domain Name yet his consent to its transfer was not obtained. Bankr. Dkt. #330.

Appellant soon afterwards agreed to withdraw his objection to the conveyance of the Domain Name in exchange for the Debtor agreeing to pay Appellant half of the $1,300,000 purchase price for the Domain Name.   The Debtor's obligation to pay Appellant was reflected in an Amended and Restated Settlement Agreement (the "Settlement Agreement") and in the Fourth Amended Plan of Reorganization (the "Plan"), which incorporates the Settlement Agreement.   Bankr. Dkt. #341 *and* Bankr. Dkt. #364.   Appellant, the Debtor and others also filed a Stipulation Regarding Amended and Restated Settlement Agreement (the "Stipulation") to further memorialize the settlement of the dispute relating to the Domain Name. Bankr. Dkt. #372.   On May 29, 2024, the Bankruptcy Court entered orders confirming the Plan and approving the Settlement Agreement.   Bankr. Dkt. #370 *and* Bankr. Dkt. #369.   On May 30, 2024, the Bankruptcy Court approved the Stipulation. Bankr. Dkt. #373.   The Plan became effective on June 18, 2024.

Bankr. Dkt. #430, page 2.

In light of the new confirmed debt which the Debtor now owed Appellant, counsel for Appellee, who held a $8,500,950 judgment (plus interest) against Appellant since January 2021, issued a restraining notice (the "Restraining Notice") on the Debtor, which restrained the Debtor from paying such debt to Appellant. Bankr. Dkt. #400, Exhibit A.   The Restraining Notice was issued pursuant to N.Y. C.P.L.R. §5222, which authorizes a judgment creditor to issue a restraining notice prohibiting a third-party from satisfying a debt owed to a judgment debtor.   The Restraining Notice was issued in early June 2024, which was after the Bankruptcy Court confirmed the Plan and approved the Settlement Agreement and the Stipulation.

When the Debtor complied with the Restraining Notice and did not pay Appellant the $650,000 which he expected to receive, Appellant submitted a letter to the Bankruptcy Court asserting that the Restraining Notice violated the automatic stay imposed by 11 U.S.C. §362(a) and requested a conference with the Bankruptcy Court. Bankr. Dkt. #400.   The Debtor did not object to complying with the Restraining Notice and the plan administrator informed the Bankruptcy Court that it "takes no position" with regard to Appellant's and Appellee's disputes.   Bankr. Dkt. #430, at 18, *and* Bankr. Dkt. #436.   The Bankruptcy Court directed the parties to brief the issue of whether the Restraining Notice violated the automatic stay imposed by 11 U.S.C. §362(a) and, after two rounds of submissions by Appellant and

Appellee, the Bankruptcy Court issued a Memorandum Opinion and Order Authorizing Debtor to Comply with Restraining Notice (the "Order"), which rejected Appellant's contention that the Restraining Notice violated such stay. Bankr. Dkt. #430.

## SUMMARY OF ARGUMENT

Appellant appeals the Order, essentially arguing that the Bankruptcy Court erred in failing to find that the issuance of the Restraining Notice violated the stay imposed by 11 U.S.C. §362(a)(2) and (3). As explained in greater detail below, Appellant's appeal must be denied for multiple reasons, most notably because (i) Appellant does not have standing to assert a claim that the Restraining Notice violated the stay imposed by 11 U.S.C. §362(a), (ii) neither 11 U.S.C. §362(a)(2) and (3) prohibited the issuance of the Restraining Notice and (iii) any stay which was previously in effect terminated with respect to the $650,000 which the Debtor was to pay Appellant. Further, as 11 U.S.C. §362 did not prohibit the issuance of the Restraining Notice, the Debtor is required to comply with the Restraining Notice, as 28 U.S.C. §959(b) requires a trustee to comply with local laws, which includes C.P.L.R. §5222. Additionally, Appellant mistakenly asserts that complying with the Restraining Notice will somehow violate or undermine the Bankruptcy Court's orders – however, the Restraining Notice actually relies on the proposition that such orders are fully valid. Finally, Appellant's public policy argument must be rejected, both because the danger of which Appellant warns will likely not be realized and

because public policy considerations support the rejection of Appellant's improper attempts to exploit the Debtor's bankruptcy to further Appellant's own attempts to avoid the enforcement of the judgment which is outstanding against Appellant.

## ARGUMENT

### POINT I

### APPELLANT DOES NOT HAVE STANDING TO ASSERT THAT ISSUANCE OF THE RESTRAINING NOTICE VIOLATED THE AUTOMATIC STAY IMPOSED BY THE BANKRUPTCY CODE

Before addressing whether the Restraining Notice in fact violated the automatic stay, the instant appeal must be rejected for the simple reason that Appellant does not have standing to raise this issue. As explained in the Order (page 14), an automatic stay's protection "does not extend to (a) creditors asserting rights in some other capacity than as a creditor, or (b) non-debtor, non-creditor third parties who nevertheless have some 'tangential' interest in the estate. In re Ampal-Am. Israel Corp., 502 B.R. 361, 371 (Bankr. S.D.N.Y. 2013) ('[T]he creditor seeking relief must allege an injury in his capacity as a creditor of the estate rather than in some other capacity.'); Siskin v. Complete Aircraft Services, Inc. (In re Siskin), 231 B.R. 514, 518 (Bankr. E.D.N.Y. 1999) ('[T]he definition of "individual" under 11 U.S.C. § 362(h) does not necessarily include all parties who may have some tangential interest in Debtor's bankruptcy.') (quoting Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer), 178 B.R. 160, 167 (Bankr. E.D.

Tenn. 1995)).”   Thus, it is for the Debtor, and not Appellant, to assert such a claim. *See, for example,* In re Adomah, 340 B.R. 453 (Bankr. S.D.N.Y. 2006) (“the law in this Circuit is clear that only a trustee has standing to prosecute causes of action on behalf of the bankruptcy estate [for a violation of the automatic stay] and that if the trustee unjustifiably refuses to bring an action, the debtor must obtain leave of court to sue before prosecuting an action”).

As applied herein, and crucially, the Debtor has not objected to the issuance of the Restraining Notice.   Indeed, the Debtor specifically informed the Bankruptcy Court that the Debtor does not object to paying the subject $650,000 to Appellee.[1] Bankr. Dkt. #430, at 18, *and* Bankr. Dkt. #436.   Nor have any of the Debtor’s pre-petition creditors objected to it.   The only one who objected is Appellant, whose only stake herein is his claim that the Debtor’s purchase of the Domain Name required Appellant’s consent.   As Appellant is a prime example of someone who only has a “tangential” interest in the estate who is asserting a claim in a capacity other than as a creditor of the estate, Appellant does not have standing to assert that the Restraining Notice violated the automatic stay.

---

[1] It is for this reason that Appellant’s reliance on Shuford v. Citizens South Bank (In re Yatko), 416 B.R. 193 (Bankr. W.D.N.C. 2008), is misplaced, as the trustee therein asserted that the attempt to force a turnover of assets violated the automatic stay of 11 U.S.C. §362(a).   In sharp contrast herein, the Debtor did not assert that the Restraining Notice violated the automatic stay of 11 U.S.C. §362(a).

## POINT II

## THE ISSUANCE OF THE RESTRAINING NOTICE DID NOT VIOLATE THE AUTOMATIC STAY IMPOSED BY THE BANKRUPTCY CODE

Even assuming, *arguendo*, that Appellant has standing to assert that the issuance of the Restraining Notice violated the automatic stay, Appellant's assertion that such a violation occurred must be rejected, both because Appellant misunderstands the purpose and function of the Restraining Notice and because the automatic stay did not prohibit the issuance of the Restraining Notice.

***Appellant Falsely Asserts that Appellee
Restrained Funds in the Debtor's Bank Account:***

Appellant's arguments rest upon a fundamental mistake of fact – Appellant repeatedly asserts that Appellee sought to restrain funds in the Debtor's bank account (*see, for example,* page 2 of Appellant's Brief). This is an invention made out of whole cloth. Appellee never took any action with regard to any of the Debtor's bank accounts or even contacted any of the Debtor's banking institutions. Bankr. Dkt. #436. Rather, Appellee, by issuing the Restraining Notice, merely prohibited the Debtor from paying funds to Appellant. Other than paying such funds to Appellant, the Debtor was – from Appellee's perspective - free to utilize its funds in any way it saw fit. Simply put, the Debtor's bank accounts were not restrained or encumbered in any way.

Appellant's mistake presumably derives from the fact that N.Y. C.P.L.R. §5222 (in relevant part) authorizes a judgment creditor to issue a restraining notice

prohibiting a third-party from transferring any asset in his/her possession or custody in which the judgment debtor has an interest or in paying a debt owed to the judgment debtor.  As such statute authorizes the issuance of a restraining notice both with respect to property of the judgment debtor in the possession of the third-party (such as funds in a bank account) and with respect to the payment of debts owed by the third-party to the judgment debtor, Appellant apparently mistakes the Restraining Notice as proceeding against specific assets in the Debtor's possession as opposed to merely addressing the payment of a monetary debt owed by the Debtor to Appellee.  As no one claims that the Debtor was in possession of any of Appellant's property, the Restraining Notice could only have – and only did – impact the debt owed by the Debtor to Appellant and prohibited the satisfaction of such debt.

As the Restraining Notice did not restrain any specific assets of the Debtor, Appellant's assertions that Appellee "sought to restrain funds in the Debtor's bank account " is simply not true.

***The Automatic Stay Did Not Prohibit the Issuance of the Restraining Notice:***

Appellant argues that 11 U.S.C. §362(a)(2) and (3) prohibited the issuance of the Restraining Notice.   However, neither provision is on point.

11 U.S.C. §362(a)(2):

11 U.S.C. §362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." Such provision is inapplicable herein for two reasons. First, and as set forth above, the Restraining Notice did not seek to enforce any judgment against the Debtor or against property of the Debtor's estate. No judgment enforcement proceedings were brought against the Debtor. Nor did Appellee proceed against any specific property of the Debtor's estate – no assets of the Debtor were levied upon or encumbered in any way.[2] It is for this reason that Appellant's reliance on In re Adomah, 340 B.R. 453 (Bankr. S.D.N.Y. 2006), is misplaced, as such case addressed a situation where a judgment creditor issued a restraining notice to an individual debtor's banking institution, thus restraining the funds of the debtor. Nothing of the sort happened herein – in sharp contrast to the facts at issue in Adomah, Appellee did not issue any restraining notices on the Debtor's banks or even restrain any of its assets (it only restrained the Debtor from paying funds to Appellant).

─────────────────────

[2] It is true that Appellee did issue an execution – pursuant to C.P.L.R. §5230 - to a New York City marshal after the Plan had been declared effective. However, such marshal did not levy upon the debt owed by the Debtor to Appellant. Bankr. Dkt. #436. In any event, Appellant's brief does not assert that such execution violated the automatic stay, no doubt because even Appellant concedes that the Plan's effectiveness precludes any such claim. As Appellant's brief does not argue that such execution was somehow improper, there is no need for Appellee to address it herein.

Second, such statute only applies to proceedings to enforce "a judgment obtained before the commencement of" the Debtor's bankruptcy proceedings. There can be no doubt that the statute's prohibition of enforcement of a judgment obtained before the commencement of the bankruptcy proceeding can only refer to *a judgment obtained against the debtor* before the commencement of the debtor's bankruptcy proceeding, not to *a judgment obtained against a third-party* – if the subject prohibition applied against enforcement of a judgment obtained against someone other than the non-debtor, there is no reason why the Bankruptcy Code would distinguish between judgments obtained against the non-debtor before the debtor's commencement of bankruptcy proceedings and judgments obtained after the commencement of such proceedings.   To argue (as Appellant implicitly does) that it also refers to judgments obtained against a debtor's creditor prior to the commencement of the debtor's bankruptcy proceeding lacks any basis in logic.   As Appellee only sought to enforce a judgment which was obtained against Appellant, who is not subject to a bankruptcy proceeding, Appellee never obtained, and never claimed to possess, a judgment against the Debtor.   It is for this reason that Appellant's reliance upon <u>In re American Medical Utilization Management Corporation</u>, 494 B.R. 626 (Bankr. E.D.N.Y. 2013) is misplaced, as such case involved an attempt to collect on a judgment obtained against the debtor and the restraint of funds due to the debtor.   In sharp contrast herein, Appellee never sought to collect on any judgment of the Debtor or attempted to restrain any funds due to

the Debtor.

Hence, 11 U.S.C. §362(a)(2) does not apply.

<u>11 U.S.C. §362(a)(3)</u>:

Similarly, 11 U.S.C. §362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Again, the Restraining Notice did no such thing. As set forth above, Appellee did not "act to obtain possession of property of the estate or of property from the estate." Nor did Appellee, by issuing the Restraining Notice, exercise control over any property of the Debtor's estate – other than being prohibited from paying Appellant (who was not subject to bankruptcy protection), the Debtor was free to do with its property as it saw fit.[3] Put another way, only if Appellant had actually levied against any specific asset of the Debtor, or even levied upon any specific bank account, would 11 U.S.C. §362(a)(3) have arguably been applicable. However, Appellee did not such thing. Hence, 11 U.S.C. §362(a)(3) does not apply.[4]

--------

[3] It is for this reason that Appellant's reliance on <u>Shuford v. Citizens South Bank (In re Yatko)</u>, 416 B.R. 193 (Bankr. W.D.N.C. 2008), is further misplaced (besides for the reason set forth above), as such case dealt with a situation where a judgment creditor of the debtor's distributee attempted to attach against the amounts due such distributee from the debtor. In sharp contrast herein, the Restraining Notice did not purport to attach against the amounts payable by the Debtor to Appellant.

[4] Even if Appellee had, prior to the expiration of the automatic stay, levied upon Appellant's right to receive $650,000 from the Debtor, doing so would likely not have violated the automatic stay. Though the law is unsettled as to whether a

***The Automatic Stay Was No Longer In Effect vis-à-vis the Restraining Notice:***

Further, even if a stay previously prohibited the issuance of a restraining notice with regard to a payment by the Debtor to Appellant, such stay had already terminated by the time the restraining notice was issued.  11 U.S.C. §362(c)(1) provides that "the stay of any act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." The Second Circuit has expressly held that "[p]roperty is no longer part of the estate if sold, abandoned, exempted, or a reorganization plan confirmed."  In re Boodrow, 126 F.3d 43 (2d Cir. 1997).  The standard set forth in Boodrow applies doubly

---

judgment creditor can garnish the amounts owed to its judgment debtor by a bankruptcy trustee, "[t]he modern trend is to permit a judgment lien creditor to execute upon trustees in bankruptcy with respect to amounts owed to a creditor of the estate."  In re Gilyard, Misc. No. 07-20001 (Bankr. D. Columbia 2008).  *See also* In re Brickell, 292 B.R. 705 (Bankr. S.D. Fla. 2003), aff'd, 142 F. App'x 385 (11th Cir. 2005), which facts are highly similar to those herein and in which the court declared: "This Court disagrees with a *per* se ban on garnishment of bankruptcy trustees. […noting the minor inconvenience to the trustee and that the garnishment] hardly hampers the efficient administration of the estate nor introduces a parasite upon the bankruptcy process.  This is especially true where, as here, the trustee is not opposed to the garnishment."  The only cases cited by Appellant which held that a garnishment upon the trustee violated the automatic stay involved a situation where the trustee specifically objected and argued that the stay had been violated (Shuford v. Citizens South Bank (In re Yatko), 416 B.R. 193 (Bankr. W.D.N.C. 2008)) and where the judgment creditor had the alternative remedy of proceeding in accordance with the requirements of Bankruptcy Rule 3001 (NVLand, Inc. v. Vogel (In re Ocean Downs Racing Association, Inc.), 164 B.R. 249 (Bankr. D. Md. 1993)), which the Bankruptcy Court noted is not available herein (Ocean Downs also relied upon a 1914 case which was concerned of the impact of recognizing the garnishment would have upon the efficiency of the bankruptcy proceedings, which clearly is not an issue herein).

herein, both because the Debtor, by executing the Stipulation, abandoned any claim to the $650,000 which was to be paid to Appellant and because the plan was confirmed by the Court on May 29, 2024 (which was prior to the issuance of the Restraining Notice).

As such, any stay which may have been in effect with respect to a restraining notice prohibiting the payment of $650,000 to Appellant automatically terminated once the parties agreed that the Debtor would pay $650,000 to Appellant and the Court confirmed such obligation.

***Conclusion:***

In light of the foregoing, the issuance of the Restraining Notice did not violate 11 U.S.C. §362, both because the stay imposed by such statute did not prohibit the issuance of the Restraining Notice and because such stay, even if it previously applied, had terminated by the time the Restraining Notice was issued.

## POINT III

### 28 U.S.C. §959(b) REQUIRES THE DEBTOR TO COMPLY WITH THE RESTRAINING NOTICE

28 U.S.C. § 959(b) provides in relevant part that

a trustee … appointed in any cause pending in any court of the United States, including a debtor in possession, ***shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated***, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof [*emphasis added*].

Such statute, which expressly applies to debtors in possession and has

repeatedly been applied in the bankruptcy context, confirms that which is intuitively obvious - a bankruptcy debtor is required to comply with all local laws and treat its property the same way everyone else does. As succinctly stated by the Supreme Court, "[b]ut in allowing rejection of those contractual duties, Section 365 [of the Bankruptcy Code] does not grant the debtor an exemption from all the burdens that generally applicable law—whether involving contracts or trademarks—imposes on property owners [citing 28 U.S.C. § 959(b)]." Mission Product Holdings, Inc. v. Tempnology, LLC, 139 S.Ct. 1652, 1665 (2019).

The Bankruptcy Court noted that, as N.Y. C.P.L.R. §5222 (which governs restraining notices in New York and was the statutory basis for the issuance of the Restraining Note) is a state law of general applicability, as the Plan has already been declared effective, as the Restraining Notice does not interfere with the Debtor's administration of this case or the use of its property or assets other than as required by law, and as the Debtor did not object to complying with the Restraining Notice, the Restraining Notice does not interfere with the rights and protections of the Bankruptcy Code and 28 U.S.C. §959(b) requires the Debtor to comply with the Restraining Notice.

Appellant does not address any of the foregoing points of the Bankruptcy Court. Nor does Appellant argue that 28 U.S.C. §959(b) is inapplicable in the bankruptcy context or that a trustee is somehow exempt from complying with local laws. Rather, Appellant's only argument against its applicability herein is that it

would violate the automatic stay imposed by 11 U.S.C. §362.   However, and as set forth in detail above, no stay was in effect at the time Appellee issued the Restraining Notice.   As Appellant's sole argument against the application of 28 U.S.C. §959(b) is easily set aside, there is no escaping the conclusion that 28 U.S.C. §959(b) requires the Debtor to comply with the Restraining Notice.

**POINT IV**

**THE ISSUANCE OF THE RESTRAINING NOTICE DID
NOT VIOLATE THE BANKRUPTCY COURT'S ORDERS**

Appellant further asserts that Appellee's issuance of the Restraining Notice and the Debtor's likely payment of the subject $650,000 to a marshal would relieve the Debtor of its obligation to pay $650,000 and violate the Bankruptcy Court's orders.   Such assertions are incorrect.

Regarding the first argument, Appellee does not argue – and has never argued – that the Debtor is relieved of its obligation to pay Appellant $650,000.   In fact, Appellee's position is precisely the opposite – the Debtor is legally obligated to pay $650,000 to Appellant, in no small part because the Bankruptcy Court confirmed such obligation.   However, as Appellee is Appellant's judgment creditor, Appellee has the statutory right to restrain the Debtor from paying its legally binding and valid debt to Appellant and ultimately require the Debtor to instead pay it to Appellee, as Appellant's judgment creditor.   Indeed, N.Y. C.P.L.R. §5222 expressly covers legal and valid debts, as it expressly provides that a restraining notice/execution can be

utilized against debts owed to a judgment debtor.   Further, Appellant's position

makes no sense economically.   While Appellant implies that the Restraining Notice

will somehow deprive Appellant of the benefit of the $650,000 payment which he

would have otherwise received form the Debtor, the opposite is the case - should the

Debtor pay a marshal the subject $650,000, Appellant would receive due value

therefor, as he would receive an appropriate credit against the judgment which

Appellee obtained against Appellant.   Thus, the Debtor is still obligated to pay the

$650,000 debt and Appellant will receive due value for the subject $650,000, even

if it is paid to a marshal.

It is precisely for this reason that Appellant's insinuation that Appellee's

issuance of the Restraining Notice violated the Bankruptcy Court's orders is baseless

- as the Restraining Notice is premised on the assumption that the Debtor's

obligation to pay Appellant $650,000 is a valid and current debt, the Restraining

Notice is entirely consistent with the Bankruptcy Court's orders.   Further, any

assertion that the Restraining Notice somehow violated or improperly undermined

the orders of the Bankruptcy Court is easily disproven by the position taken by the

Bankruptcy Court itself.   The Bankruptcy Court was best positioned to determine

the intended meaning, reach and scope of its own orders.   If the Bankruptcy Court

believed that the Restraining Notice somehow violated or improperly undermined

its orders, the Bankruptcy Court no doubt would have issued an appropriate order

addressing same.   The fact that the Bankruptcy Court failed to do so – particularly

after Appellant presented its argument to the Bankruptcy Court – must be seen as conclusive proof that the Bankruptcy Court did not agree with any assertion that its orders were somehow violated or undermined.

**POINT V**

**PUBLIC POLICY CONSIDERATIONS FAVOR
PERMITTING THE ISSUANCE OF THE RESTRAINING NOTICE**

Likely because the plain language of 11 U.S.C. §362 establishes that the issuance of the Restraining Notice did not violate the automatic stay (whether because neither 11 U.S.C. §362(a)(2) or (3) prohibited the service of a restraining notice on the Debtor or because the stay terminated with respect to the $650,000 payment to be made to Appellant pursuant to 11 U.S.C. §362(c)), Appellant proffers a public policy argument in favor of the conclusion that Appellant's issuance of the Restraining Notice was improper.  Specifically, Appellant argues that, should the Restraining Notice be allowed to stand, "'open season for restraining notices' will be upon the bankruptcy courts…. In future cases, parties – perhaps even collection agencies – may search a bankruptcy docket for the names of creditors against whom state court judgments exist and serve the debtor with numerous state court notices to prevent distributions from being made to such creditors under a plan."  Such argument must be rejected, both because facts have disproven its basic contention and because public policy considerations actually support the conclusion that Appellant's issuance of the Restraining Notice was proper.

That Appellant's vision of bankruptcy court chaos is a false prophecy is established by the fact that a different bankruptcy court has long ago reached the same conclusion which Appellant counsels against and no such chaos has erupted. Specifically, in In re Brickell, 292 B.R. 705 (Bankr. S.D. Fla. 2003), *aff'd*, 142 F. App'x 385 (11th Cir. 2005), the United States Bankruptcy Court for the Southern District of Florida specifically allowed a judgment creditor to garnish the amounts which its judgment debtor was to receive from a bankruptcy trustee.   Should Appellant's warning have any merit, one would expect that, upon the issuance of such ruling, judgment creditors far and wide to have then served bankruptcy trustees "with numerous state court notices to prevent distributions from being made to" their judgment debtors, and, in doing so, cite Brickell as authority.   However, despite the fact that more than twenty years have passed since the United States Bankruptcy Court for the Southern District of Florida issued its decision and almost twenty years have passed since the Eleventh Circuit affirmed such decision, Appellant's prediction has not come to pass (as evidenced by the utter paucity of cases addressing this issue).   If Brickell did not lead to the chaos which Appellant predicts, there is no reason to assume that one more decision reaching the same conclusion as Brickell would lead to such result.

Further, public policy considerations actually urge that the Court reject Appellant's appeal.   By seeking to prevent Appellee from enforcing his judgment against Appellant's asset, Appellant seeks to exploit the Debtor's bankruptcy

proceeding to shield Appellant's assets from his judgment creditor and dissipate such funds before such judgment creditor can seize on such assets, all under the cover of the Bankruptcy Court's and this Court's authority, with no attendant benefit to the Debtor.  Appellant's attorney essentially admitted this as he stated that the lion's share of the subject $650,000 payment (approximately $550,000) would be used to pay outstanding invoices owed to Appellant's counsel of record herein. Bankr. Dkt. #407, page 5.  Thus, Appellant seeks to pick and choose which of his creditors gets paid and use this Court as cover for doing so.  This is improper. Should he wish to do so, Appellant is free to seek bankruptcy protection and let that process determine which creditors should be paid with the limited assets available to Appellant.  As he is clearly unwilling to do so, it is not for Appellant to pick which of his creditors should be paid first and it is certainly not appropriate for Appellant to seek to exploit the Debtor's bankruptcy proceedings as a vehicle to do so.

Ultimately, and plainly, as the Debtor's obligation to pay $650,000 is settled, the instant dispute has nothing to do with the Bankruptcy Code but is only a dispute between Appellee and Appellant as to whether Appellee should be allowed to exercise his rights as a judgment creditor.  Notwithstanding Appellant's assertions, Appellee is well within his rights to assert his judgment lien against payments which the Debtor is obligated to make.  *See, for example,* Shirley Duke Associates v. Shirley Duke Associates, A.P.I., 611 F.2d 15 (2d Cir. 1979) (which upheld an

attorney's charging lien against payments which the debtor was obligated to make –
"[a]n attorney representing a creditor in a bankruptcy proceeding has a judicially
enforceable section 475 lien upon the fund allocated to the payment of his client's
claim").   Appellant's attempt to have the Court run interference against such
attempts by asserting non-existing rights under the Bankruptcy Code is improper and
should be rejected.[5]   The Bankruptcy Court reached this exact conclusion when it
declared that it "declines to allow the Bankruptcy Code to be wielded as a cudgel in
an unrelated dispute between [Appellee] and [Appellant]." Bankr. Dkt. #430, page
26.   There is no reason why the Court should reach a different result.

---

[5] It must be noted that this is not the first improper attempt by Appellant to avoid his legal
responsibilities vis-à-vis Appellee's judgment.   The Supreme Court of the State of New York
issued an order of contempt against Appellant more than two years ago for failing to respond to a
judgment enforcement subpoena which was issued against him.   Goldman failed to cure such
contempt.   Bankr. Dkt. #407, page 5, and the attachment thereto.

## <u>CONCLUSION</u>

For the reasons set forth above, the Bankruptcy Court's Order should be affirmed.

Dated:   November 18, 2024
        New York, New York

                Respectfully submitted,

                SUKENIK, SEGAL & GRAFF, P.C.

                By: <u>/s/ *Douglas Segal*</u>
                    Douglas Segal, Esq.
                450 Seventh Avenue, 42nd Floor
                New York, New York 10123
                (212) 725-9300

                Counsel to the Appellee

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that the above memorandum contains 4,658 words. The above memorandum also complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this memorandum has been prepared in a proportionally spaced typeface using Microsoft Word/Microsoft Office Professional Plus 2019 in Times New Roman 14-point font.

Dated:   November 18, 2024
         New York, New York


                              */s/ Douglas Segal*
                              DOUGLAS SEGAL


N:\WP\PAMELA\CHETRIT\GOLDMAN\25    STEWART\CONFESSION    OF    JUDGMENT\WYTHE    BERRY'APPELLATE
BRIEF'OPPOSITION.DOCX