UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 24-CV-06499 (AH)

| | |
|---|---|
| In re: <br><br> WYTHE BERRY FEE OWNER LLC, <br><br>       Debtor. | Case No. 22-11340 (MG) |
| YOEL GOLDMAN <br><br>       Appellant, <br>   v. <br><br> MEYER CHETRIT, <br><br>       Appellee. | On Appeal from the United States Bankruptcy Court for the Southern District of New York |

## **REPLY BRIEF OF THE APPELLANT**

Elliot Moskowitz
(*elliot.moskowitz@davispolk.com*)

DAVIS POLK &
WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel to the Appellant*

# TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................1

ARGUMENT ........................................................................................................3

    I.      Appellant Has Standing to Assert an Automatic Stay Violation ..........3

          A.      Appellee Waived any Standing Argument .................................3

          B.      Appellant Has Standing as a Creditor and Party in Interest .......3

    II.     Under the Plain Language of 11 U.S.C. § 362, the Notice Violates the Automatic Stay ......................................................................................6

    III.    The Automatic Stay Was—and Remains—In Effect .........................9

    IV.    The Notice Violated Three Bankruptcy Court Orders .......................11

    V.     28 U.S.C. § 959(b) Is Not Applicable .................................................12

    VI.    The Bankruptcy Court's Judicial "Exception" to the Automatic Stay Would Have Serious Consequences...................................................13

CONCLUSION ..................................................................................................15

## TABLE OF AUTHORITIES

P<small>AGE</small>(S)

C<small>ASES</small>

*In re Adomah,*
340 B.R. 453 (Bankr. S.D.N.Y. 2006) ........................................................ 5, 8

*In re Am. Med. Utilization Mgmt. Corp.,*
494 B.R. 626 (Bankr. E.D.N.Y. 2013) ............................................................. 8

*In re Ampal-Am. Israel Corp.,*
502 B.R. 361 (Bankr. S.D.N.Y. 2013) ........................................................ 3, 4

*In re Boodrow,*
126 F.3d 43 (2d Cir. 1997) ............................................................................. 9

*In re Brickell,*
292 B.R. 705 (Bankr. S.D. Fla. 2003), *aff'd,* 142 F. App'x 385
(11th Cir. 2005) ............................................................................................. 7

*Chartschlaa v. Nationwide Mut. Ins. Co.,*
538 F.3d 116 (2d Cir. 2008) ........................................................................... 6

*Fed. Home Loan Mortg. Corp. v. 550 Riverside Owners Corp.,*
No. 90 CIV. 7873 (RLC), 1991 WL 258779 (S.D.N.Y. Nov. 25, 1991) .......... 13

*Gilyard v. White,*
No. MISC 07-20001, 2008 WL 5076978 (Bankr. D.D.C. Oct. 3, 2008)............. 7

*In re Killmer,*
513 B.R. 41 (Bankr. S.D.N.Y. 2014) ............................................................... 9

*In re Markus,*
620 B.R. 31 (S.D.N.Y. 2020) ......................................................................... 3

*Mission Product Holdings, Inc. v. Tempnology,*
587 U.S. 370 (2019) ..................................................................................... 13

*NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n., Inc.),*
164 B.R. 249 (Bankr. D. Md. 1993) ................................................................ 8

*In re REA Express, Inc.,*
2 B.R. 730 (S.D.N.Y. 1980) ...................................................................... 12, 13

*Shirley Duke Associates v. Shirley Duke Associates, A.P.I.*,
   611 F.2d 15 (2d Cir. 1979) ................................................................... 15

*Shuford v. Citizens South Bank (In re Yatko)*,
   416 B.R. 193 (Bankr. W.D.N.C. 2008) ................................................. 8

*In re Stone Barn Manhattan LLC*,
   405 B.R. 68 (Bankr. S.D.N.Y. 2009) ................................................... 4

*United States ex rel. Maurice Keshner v. Nursing Personnel Home Care*,
   794 F.3d 232 (2d Cir. 2015) ................................................................ 3

## Statutes & Rules

11 U.S.C. § 362 .................................................................................*passim*

11 U.S.C. § 365 ................................................................................. 13

11 U.S.C. § 541(a)(1) .......................................................................... 6

11 U.S.C. § 1109 ................................................................................. 4

28 U.S.C. § 959(b) ....................................................................... 12, 13

C.P.L.R. § 5222 ............................................................................... 5, 8

Fed. R. Bankr. P. 3001 ....................................................................... 8

Fed. R. Civ. P. 60(b) .........................................................................12

## Other Authorities

U.S. Const., art. VI, cl. 2 .................................................................. 11

## **INTRODUCTION**

Appellee strains to argue that the Notice did not violate the automatic stay.[1] But in seeking to restrain funds in a debtor's bank account without seeking permission from the bankruptcy court, the Notice plainly seeks to "exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3). The underlying facts are not in dispute, and the inquiry ought to begin and end with the statutory text.

Perhaps understanding this reality, Appellee resorts to other, procedural arguments. For the first time, Appellee argues that Appellant lacked standing to raise the stay violation at all. But Appellee failed to preserve this argument for appeal, and in any case it is wrong: Appellant is a creditor of the estate and has a right to seek payment and enforce relevant sections of the Bankruptcy Code like any other party in interest.

Appellee next tries to forge ultra-fine distinctions, arguing that he merely sought to prevent the Debtor from disbursing the funds rather than seize them himself (yet). But restraining what the Debtor does with its money (which is obviously held in its bank accounts) is the same as controlling its property, and the stay violation is manifest.

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings given to them in Appellant's opening brief (Dkt. #5, "Appellant Br.").

At bottom, this Court is presented with the Bankruptcy Court's judge-made exception to the automatic stay. Acknowledging that little authority existed for the proposition, the Bankruptcy Court held that the funds at issue here are different because the Debtor intended to pay them to a creditor. There is no support for that distinction in the statutory text; nor in precedential case law; nor in policy. The Bankruptcy Court decision is even worse given that other orders of the Bankruptcy Court and the Plan itself obligated the Debtor to make the $650,000 payment at issue, and the Debtor stands ready, willing and able to do so but for the Notice. And even beyond the automatic stay, the Notice violates the Plan's injunction against all "parties in interest" from "interfere[ing]" with its provisions. Bankr. Dkt. #364 § 10.5(a).

Appellee had other options. He could have objected to the Settlement Agreement or the Plan, or otherwise moved for relief from the automatic stay. It is undisputed that Appellee was following the developments in the bankruptcy court, and he does not plead ignorance as his excuse. Instead, he resorted to self-help and issued the Notice, a step even the Bankruptcy Court (and United States Trustee) acknowledged it could not recall seeing a party do before. That is contrary to the plain language of Section 362(a) of the Bankruptcy Code, which contains no relevant exceptions. This Court should so hold, and the Order of the Bankruptcy Court should be reversed.

## ARGUMENT

### I.    Appellant Has Standing to Assert an Automatic Stay Violation

#### A.    Appellee Waived any Standing Argument

In two rounds of letter briefing, a status conference, and a hearing before the Bankruptcy Court, Appellee never argued that Appellant lacks standing to assert an automatic stay violation.  *See* Bank. Dkt. ##407, 411.  Nor did the Bankruptcy Court address Appellant's standing.  *See generally* Order.  In fact, the point is not addressed anywhere in the record.  *See generally* Dkt. #3 (Designation of Bankruptcy Record on Appeal).  "Any arguments not raised in the bankruptcy court are considered waived" and "will not be considered on appeal."  *In re Markus*, 620 B.R. 31, 36 (S.D.N.Y. 2020).  As Appellee proffers "no reason for [his] failure to raise the argument" regarding Appellant's standing with the Bankruptcy Court, he has waived the argument.  *Id.* (citing *United States ex rel. Maurice Keshner v. Nursing Personnel Home Care*, 794 F.3d 232, 234 (2d Cir. 2015)).

#### B.    Appellant Has Standing as a Creditor and Party in Interest

Even if the argument were preserved, Appellee acknowledges that a "creditor seeking relief [who] allege[s] an injury in his capacity as a creditor of the estate" has standing.  Appellee Br. 6 (citing *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 371 (Bankr. S.D.N.Y. 2013).  Goldman is such a creditor: he is owed

$650,000 by the Debtor pursuant to the Settlement Agreement incorporated in the Plan, which the Debtor entered into to facilitate the administration of its estate, the sale of its assets, and ultimate closure of its Chapter 11 case.  Bankr. Dkt. #364 Ex. A § 4(d).  As opposed to the movants in Appellee's case *In re Ampal-American Israel Corp.*, 502 B.R. 361, 372 (Bankr. S.D.N.Y. 2013), who "did not allege much less show that they are creditors" in seeking damages after incurring legal fees and expenses in response to a demand for payment by the debtor's bondholders, here the court-ordered Settlement Agreement, Plan, and Stipulation all establish Goldman's creditor status and he merely seeks to protect his rights as a creditor.

Moreover, under 11 U.S.C. § 1109, any "party in interest"—which explicitly includes "a creditor"—"may raise and may appear and be heard on any issue in a case under" the Bankruptcy Code.  The Code does not define "party in interest," but courts construe the term to apply to parties that have "a pecuniary interest . . . directly affected by the bankruptcy proceeding," which plainly includes Appellant, who is owed $650,000 by the Debtor.  *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009).  Whether or not the Debtor affirmatively supports Goldman's objection to the Notice is irrelevant for the purposes of standing. While Appellee posits that "it is for the Debtor . . . to assert such a claim," Appellee Br. 7, neither Section 362 nor the cases interpreting it contain such a

limitation.[2]  In addition, Appellee overstates things when he implies that the Debtor has supported the Notice by "not object[ing]" to it.  Appellee Br. 7.  In reality, the Debtor explained to the Bankruptcy Court that it "stands ready to transfer the $650,000 to Goldman immediately upon receipt of assurance that either [Appellee] has withdrawn the restraining order or that such a transfer would not violate the restraining order."  Bankr. Dkt. #402 at 2.  That is a far cry from supporting Appellee's position.

Finally, Section 362 itself contemplates that a creditor may take action to enforce its provisions.  Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).  In short, there is no basis for a party to violate the automatic stay and then argue that the victim of the violation has no ability to seek redress.

---

[2] Appellee cites *In re Adomah*, 340 B.R. 453, 458 (Bankr. S.D.N.Y. 2006), in which the court held that issuing a C.P.L.R. § 5222 restraining notice on a debtor violates the automatic stay, for the inapplicable proposition that "only a trustee has standing to prosecute causes of action on behalf of the bankruptcy estate."  Appellee Br. 7.  But Goldman is not seeking to pursue a cause of action on behalf of the Debtor.

II.    <u>**Under the Plain Language of 11 U.S.C. § 362, the Notice Violates the Automatic Stay**</u>

The restraining Notice is a straightforward violation of Section 362(a)(3) of the Bankruptcy Code.  The Notice states that the Debtor is "forbid[den] . . . to make or suffer any sale, assignment, or transfer of" the $650,000 at issue.  Bankr. Dkt. #400 Ex. A.  The Notice thus plainly seeks to "exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3).  Appellee may not have read his own Notice, as he claims it is "an invention made out of whole cloth" that the Notice "sought to restrain funds in the Debtor's bank account."  Appellee Br. 8.  But that is literally what the words of the Notice do.

Appellee strains to argue that because he "never took any action with regard to any of the Debtor's bank accounts" or "contacted" the Debtor's banks, this means that he did not try to exercise control over the Debtor.  Appellee Br. 8.  But Appellee does not dispute that the $650,000 at issue remains property of the estate and sits in the Debtor's bank account, and he admits that "by issuing the Restraining Notice, [Appellee] . . . prohibited the Debtor from paying funds to Appellant."[3]  *Id.*  The matter should end there:  prohibiting a debtor from using its

---

[3] Appellee does not dispute that property of the estate, includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Appellant Br. 13 (citing 11 U.S.C. § 541(a)(1)).  "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."  *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (citation omitted).

own property is clearly a form of control, so at a minimum, the Debtor seeks to "exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3).

Furthermore, the Notice also seeks to "obtain possession of property of the estate" in violation of 11 U.S.C. § 362(a)(3).  While Appellee is technically correct that the Notice only ***restrains*** the Debtor from paying Appellant rather than ***requiring*** the Debtor to pay Appellee, Appellee does not deny (nor can he) that his ultimate goal is to obtain the $650,000 before it ever reaches Appellant's hands. For this reason, any ostensible distinction between the Notice and a levy upon the Debtor's bank account, Appellee Br. 10, is a distinction without a difference.[4]  The Notice is merely the first step in Appellee's efforts to swoop in on $650,000.

The Notice also violates 11 U.S.C. § 362(a)(2) because it attempts to "enforce[] against the debtor [and] property of the estate . . . a judgment obtained before the commencement of the [Chapter 11] case": the State Court Judgment obtained before the petition.  Appellee's argument that the statute only refers to a "judgment: against the debtor," Appellee Br. 11, cannot be reconciled with the plain language of the statute, which reflects no such limitation.

---

[4] While Appellee even suggests that a levy against the Debtor's bank account would not violate the automatic stay, Appellee Br. 12 n.4, his only support for this is (i) *In re Brickell*, 292 B.R. 705, 709 (Bankr. S.D. Fla. 2003), *aff'd*, 142 F. App'x 385 (11th Cir. 2005), which did not even address a violation of the automatic stay, and (ii) *Gilyard v. White*, No. MISC 07-20001, 2008 WL 5076978, at *2 (Bankr. D.D.C. Oct. 3, 2008), in which the court struck the lien seeking to recover a judgment against a non-debtor, which did not implicate estate funds, and did not address whether the lien violated the automatic stay.

Appellee's attempts to distinguish the cases in this Circuit holding that a C.P.L.R. § 5222 restraining notice violates the automatic stay fare no better.  First, Appellee asserts that *In re American Medical Utilization Management Corp.*, 494 B.R. 626 (Bankr. E.D.N.Y. 2013) does not support a Section 362(a)(2) violation because the case "involved an attempt to collect on a judgment obtained against the debtor" rather than a third party.  But Appellant cites this case to support that a C.P.L.R. § 5222 restraining notice violates Section 362(a)*(3)*—not (a)*(2)*—and Appellee fails to explain why the case should not apply on this basis.  Second, Appellee tries to distinguish *In re Adomah*, 340 B.R. 453 (Bankr. S.D.N.Y. 2006) because the judgment creditor had issued a restraining notice to the debtor's bank, Appellee Br. 10, but there is no practical distinction with what Appellee did here: issue a Notice to restrain funds that are held at the Debtor's bank.[5]

---

[5] Appellee does not dispute that two of the three cases relied upon by the Bankruptcy Court (though all out of circuit) "concluded that the attempted enforcement efforts [to enforce the restraints] were impermissible."  Order at 20.  He addresses them in a footnote, Appellee Br. 12 n.4.  First, Appellee notes that in *Shuford v. Citizens South Bank (In re Yatko)*, 416 B.R. 193, 195 (Bankr. W.D.N.C. 2008), the Trustee agreed that the stay had been violated, but Appellee does not explain why a trustee's (or a debtor's) decision on whether to support stay violation arguments should be determinative, or why this is relevant here—as the Debtor has not expressed support for Appellee's position and stands ready to pay Appellant.  Second, Appellee writes that in *NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n., Inc.)*, 164 B.R. 249, 251-54 (Bankr. D. Md. 1993), the judgment creditor had the alternative remedy of proceeding in accordance with Bankruptcy Rule 3001 (which does not apply here).  Moreover, Appellee had other options besides violating the stay: he could have appeared in the bankruptcy case and objected to the Settlement Agreement, or he could have moved to lift the automatic stay to seek permission to serve the Notice.  Instead, he resorted to self-help and violated the stay.

## III.    <u>The Automatic Stay Was—and Remains—In Effect</u>

The automatic stay was in effect when Appellee served the Notice on the
Debtor within days of the Bankruptcy Court confirming the Plan on May 29, 2024,
and it remains in effect today.  *See* Bankr. Dkt. #400 Ex. A.  The plain language of
11 U.S.C. § 362(c) states that "the stay of any act against property of the estate . . .
continues until such property is no longer property of the estate."  *See also In re
Killmer*, 513 B.R. 41, 50 (Bankr. S.D.N.Y. 2014) (the "stay continues to protect
property of the estate after the discharge order is entered and until the case is
closed or the property is formally abandoned").  As discussed above and in
Appellant's opening brief at 12-13, the $650,000 at issue remains property of the
estate, as the money still sits in the Debtor's bank account together with the
Debtor's other funds.  Appellee also implicitly concedes this point, as the Notice is
directed at "property in which the judgment debtor has an interest" and purportedly
forbids the Debtor "to make or suffer any sale, assignment, transfer of, or any
interference with, any such property."  Bankr. Dkt. #400 Ex. A at 1-2.

Appellee does not engage with Section 362(c), but merely cites a
parenthetical in *In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997) to incorrectly claim
that (i) the stay terminated because the Debtor "abandoned" the $650,000 and (ii)

the stay terminated because the Plan was confirmed.[6]  Appellee Br. 13-14.  First, as

discussed above, the Debtor still holds the $650,000 and did not "abandon" it by

agreeing to pay Appellant in accordance with the Settlement Agreement and Plan.

Second, if the stay were to terminate whenever the Debtor agrees or allows a

claim, or upon a plan's confirmation, then nothing would stop parties from

interdicting such payments, either through state court restraining notices or other

litigation.  That is plainly inconsistent with the statutory language and purpose of

the automatic stay.

For this reason, plans of reorganization—such as the Plan here—frequently

require that the automatic stay remain in effect after confirmation: "Unless

otherwise provided in the Plan, the Confirmation Order, or a separate order of the

Bankruptcy Court, all . . . stays arising under or entered during the Chapter 11 Case

under Bankruptcy Code section[] 362 . . . and in existence on the Confirmation

Date, shall remain in full force and effect **until the closing of the Chapter 11**

**Case**."  Bankr. Dkt. #364 § 10.4 (emphasis added).  Perhaps this is why the

Bankruptcy Court did not even address Appellee's argument that the stay was no

---

[6] Appellee cites no case holding that a stay terminates when a plan is confirmed.  Even
following confirmation, generally property remains in the estate's possession until the plan's
effective date, so the stay cannot terminate before the effective date.  *See* 11 U.S.C. § 362(c)(1).
In this instance, the Notice was issued on June 4, 2024 and served on the Debtor shortly
thereafter, two weeks **before** the Plan became effective on June 18, 2024.  Bankr. Dkt. #400 Ex.
A; Bankr. Dkt. #387 (Notice of Occurrence of Effective Date of the Plan).

longer in effect, though the parties briefed it below.  *See* Bankr. Dkt. ##406 at 102, 407 at 3; *see generally* Order.

## IV.    <u>The Notice Violated Three Bankruptcy Court Orders</u>

The Settlement Order, the Plan Confirmation Order, and the Stipulation all require the Debtor to pay $650,000 to Appellant (or as otherwise directed by him). Appellant Br. 21-23.  Curiously, Appellee argues that the Notice ***honors*** the three Bankruptcy Court Orders because by going after money owed to Appellant, it recognizes that "the Debtor is legally obligated to pay $650,000 to Appellant, in no small part because the Bankruptcy Court confirmed such an obligation."  Appellee Br. 16.  Appellee overlooks that the language of the orders do not simply memorialize a liability, but require immediate payment: "the Debtor shall distribute the Domain Purchase Price as follows: . . .  50% shall be paid to Yoel Goldman (or as otherwise directed by Yoel Goldman)."  Bankr. Dkt. #364 Ex. A § 4(d).  As the state court Notice prevents this payment, it violates the three Bankruptcy Court Orders, and must yield under the Supremacy Clause.[7]

Separately, Appellee does not respond (nor can he) to the language of Plan § 10.5(a), which enjoins all "parties in interest" from "taking any actions to interfere

---

[7] Whether or not Appellant would receive $650,000 credit by a state court marshal if Appellee were to receive the funds, as Appellee suggests at Appellee Br. 17, has no bearing on whether the Notice can overcome the three Bankruptcy Orders and the Supremacy Clause, U.S. Const., art. VI, cl. 2.

with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan." Bankr. Dkt. #364 § 10.5(a). Nor does Appellee muster any excuse for why he engaged in impermissible self-help rather than objecting to any of the three Bankruptcy Court orders before they were entered, filing a motion pursuant to Federal Rule of Civil Procedure 60(b) to seek relief from them later, or filing a motion to lift the stay.

The Bankruptcy Court did not address in the Order whether the Notice violates its three prior orders. Appellee makes much of this silence, arguing that the Bankruptcy Court would not have authorized compliance with the Notice in violation of its orders. This argument is circular and contrary to the standard of review applied by this Court. *See* Appellant Br. 1-2 (explaining that the applicability of the automatic stay is a question of law subject to *de novo* review).

## V.     28 U.S.C. § 959(b) Is Not Applicable

Appellee argues that 28 U.S.C. § 959(b), which requires a debtor to "manage and operate" its property "according to the requirements of the valid laws of the State in which such property is situated," obligated the Debtor to comply with the Notice. However, case law makes clear that the requirement that a debtor comply with state law applies only so long as "that state law does not conflict with the bankruptcy law." *In re REA Express, Inc.*, 2 B.R. 730, 734 (S.D.N.Y. 1980). This makes sense, because the Supremacy Clause makes the Bankruptcy Code superior

to any state law of general applicability, and if there is a conflict between the two, the state law gives way.  Appellant Br. 22 (collecting cases).  Accordingly, where courts in this circuit have had occasion to enforce Section 959(b), the laws at issue were administrative in nature and did not conflict with bankruptcy law.  *See, e.g.*, *In re REA Express, Inc.*, 2 B.R. at 734 (requiring debtor to renew commercial operating certificates); *Fed. Home Loan Mortg. Corp. v. 550 Riverside Owners Corp.*, No. 90 CIV. 7873 (RLC), 1991 WL 258779, at *1-2 (S.D.N.Y. Nov. 25, 1991) (requiring receiver to pay fines for sanitation violations).

Appellee cannot cite a single case where a court applied Section 959(b) to override the automatic stay.  He references *Mission Product Holdings, Inc. v. Tempnology*, 587 U.S. 370 (2019) because it contains a one-off citation to Section 959(b), but the case addresses the effect of an executory contract under 11 U.S.C. § 365 and does not interpret either Section 959(b) or Section 362.  Appellee also doubles down on the argument the automatic stay was not in effect when he issued the Notice—arguing that enforcing the state law Notice under Section 959(b) would not conflict with Section 362—but Appellee is wrong for the reasons explained above.

## VI.    The Bankruptcy Court's Judicial "Exception" to the Automatic Stay Would Have Serious Consequences

Given that the Notice so plainly violated the automatic stay, this Court need not grapple with the policy implications of a contrary ruling.  But if the Court is

minded to move beyond the language of the statute, Appellee's policy arguments fare no better.  If Appellee is allowed to bypass the automatic stay here, there is little to stop parties in bankruptcies large and small from inundating courts with state court notices or other litigation to prevent distributions from being made to creditors under a plan of reorganization.  Appellee's argument that the floodgates did not open following the *Brickell* decision is cold comfort: *Brickell* was an obscure Chapter 7 proceeding that did not even address Section 362, whereas the Debtor's Chapter 11 proceedings frequently attract media attention.  And in any event, even one incorrectly decided case can spurn others, as reflected in the Order's reliance on *Brickell*.

It is ironic that Appellee claims Appellant "seeks to exploit the Debtor's bankruptcy proceeding," Appellee Br. 19-20, when Appellee apparently monitored the Debtor's docket for Appellant receiving a payment, bided his time until after the payment was so-ordered by the Bankruptcy Court, and only then surfaced with the Notice.  And Appellee's allegation that Appellant would use the $650,000 to pay his counsel lacks any support in the record and is not relevant to the question of whether the automatic stay and the Bankruptcy Court's orders must be

respected.[8]  *See* Appellee Br. 20 (citing Bankr. Dkt. #407 (Appellee's own letter with the same unfounded allegation)).

At base, none of Appellee's efforts to cabin this case change the basic fact that Appellant reached a deal with the Debtor with the expectation that Section 362, the Plan, and Bankruptcy Court orders would be enforced consistent with their plain language.  Otherwise Appellant would never have made the deal or withdrawn his objection to the conveyance of the Domain Name, and the Plan confirmation hearing may have proceeded quite differently.  So if the Order is permitted to stand, it would imperil future deals between debtors and creditors and future debtors' abilities to administer their estates under the automatic stay's protection.

## CONCLUSION

For the foregoing reasons, and the reasons explained in Appellant's opening brief, the Bankruptcy Court's Order should be reversed.

---

[8] Appellee's reliance on *Shirley Duke Associates v. Shirley Duke Associates, A.P.I.*, 611 F.2d 15 (2d Cir. 1979) is misplaced.  In *Shirley Duke*, the appellate court held that the bankruptcy court did not have jurisdiction over an attorney's lien over the fund allocated to the payment of his client's claim, but the fund at issue was "not part of the estate or under the control of the court."  *Id.* at 18.  So contrary to Appellant's assertion, the lien was not "against payments which the debtor was obligated to make."  Appellee Br. 20-21.

Dated:  December 2, 2024
        New York, New York

                      DAVIS POLK & WARDWELL LLP

                      By:  */s/ Elliot Moskowitz*

                      450 Lexington Avenue
                      New York, New York 10017
                      Telephone: (212) 450-4000
                      Facsimile: (212) 701-5800
                      Elliot Moskowitz

                      *Counsel to the Appellant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that the above memorandum contains 3,173 words. The above memorandum also complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this memorandum has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ Elliot Moskowitz*
Elliot Moskowitz